McNALLY *v.* BOARD OF CANVASSERS OF WAYNE COUNTY.

1. COURTS—SUPREME COURT—MANDAMUS—ORIGINAL JURISDICTION.
    Although petition for writ of mandamus against county board
    of canvassers relating to votes for office of prosecuting attor-
    ney of a populous county should have been presented to circuit
    court of such county, where case is considered by Supreme
    Court as one of extreme urgency, it exercises jurisdiction pur-
    suant to Constitution and pertinent statute (Const. 1908, art. 7,
    § 4; 3 Comp. Laws 1929, § 13535).

2. SAME—SUPREME COURT—MANDAMUS—BOARDS OF CANVASSERS.
    The Supreme Court has jurisdiction to hear and determine man-
    damus cases brought against boards canvassing votes cast at
    public elections (Const. 1908, art. 7, § 4; 3 Comp. Laws 1929,
    § 13535).

3. SAME—OPINIONS—ILLUSTRATION—PRECEDENT.
    What is said in an opinion by way of illustration only is of no
    binding authority as a decision.

4. SAME—OPINIONS—OBITER DICTA—DOUBLE STRAIGHT BALLOTS—
    STICKER BALLOTS.
    Statements as to so-called ''double straight'' ballots, contained
    in opinion written in case involving determination as to
    ''sticker'' ballots, *held,* mere obiter dicta.

5. SAME—OPINIONS—PRECEDENTS.
    Generally a decision is not a precedent as to a point which was
    not sufficiently argued and presented to the court, although
    if the point was an essential one the fact that it was duly pre-
    sented and considered may be presumed.

(551)

6. SAME—OPINIONS—OBITER DICTA.

Statements and comments in an opinion concerning some rule of law or debated legal proposition not necessarily involved nor essential to determination of the case in hand are, however illuminating, but obiter dicta and lack the force of an adjudication.

7. ELECTIONS—INTENT OF VOTER—STATUTES—COURTS.

Judges of election and courts should not be required to spend their time in endeavoring to ascertain what the intention of the elector was in depositing his ballot, except so far as he has expressed that intention in the manner and by the methods prescribed by the lawmaking power.

8. SAME—DOUBLE STRAIGHT BALLOTS—EVIDENCE OF INTENT.

The marking of a ballot with cross marks in circles at the head of each of two tickets appearing thereon can be counted for no party, even where one of the tickets is incomplete, in the absence of further indication of intent on the part of the voter (1 Comp. Laws 1929, § 3077).

9. SAME—INTENT OF VOTER—STATUTES.

Effect should be given to the expressed intention of a voter, but where he is indifferent to and disobeys the plain import of the election statute's instructions, it is not for the court to supply nor to construct an intention which the voter did not express (1 Comp. Laws 1929, § 3077).

10. COSTS—PUBLIC QUESTION—MANDAMUS—DOUBLE STRAIGHT BALLOTS.

No costs are allowed in mandamus proceeding against a county board of canvassers to determine validity of so-called "double straight" ballots, where one ticket was incomplete, a matter of public interest being involved (1 Comp. Laws 1929, § 3077).

Petition by Jamês N. McNally against Board of Canvassers of Wayne County for writs of mandamus and prohibition to prevent counting of votes where straight party tickets were voted for two or more parties. Gerald K. O'Brien intervened. Submitted December 23, 1946. (Calendar No. 43,626.) Writ granted January 7, 1946.

*Waldo C. Granse (Wilber M. Brucker, George A. Gray* and *J. Lynn Fewlass,* of counsel), for plaintiff.

*Stanley E. Beattie,* for defendant.

*Wm. Henry Gallagher (Frank G. Schemanske, Patrick S. Nertney, Arthur L. Robbins, Michael Guest* and *Allan B. Schmier,* of counsel), for intervenor.

REID, J. Plaintiff filed his petition for the purpose of procuring a writ of mandamus directing defendant board of canvassers not to count so-called "double straight" ballots in a recount proceeding, and also for writ of prohibition. This is not a suit to obtain a judicial determination of the title to the office of prosecuting attorney for Wayne county. Plaintiff James N. McNally was the candidate of the Republican party for the office of prosecuting attorney for Wayne county, at the general election held November 5, 1946. According to the official election returns from the various voting precincts of Wayne county, plaintiff received 303,679 votes for said office and Gerald K. O'Brien, candidate of the Democratic party for reelection to the same office, received 302,189 votes. A statement was made by defendant board indicating such totals but defendant board did not issue a certificate of plaintiff's election.

On November 23, 1946, Gerald K. O'Brien's petition for recount of the ballots cast at the said election was filed with defendant board. Defendant began the recount on November 29, 1946.

The official ballot in Wayne county for the November 5, 1946 election contained the names of Re-

publican and Democratic nominees for all offices to be filled for State, congressional, legislative and county offices; it also contained the names of Prohibition party nominees for all those offices except prosecuting attorney. The ballot also had on it the names of candidates of the Socialist Labor party of America for all State offices to be filled and, also, for United States senator but none for the office of prosecuting attorney, or for any other county office. The Communist party was represented on the ballot by nominees for three State offices, a nominee for United States senator and three nominees for member of the State legislature, but no other nominees appeared on said Communist ticket.

During the progress of recounting the ballots it appeared that a number of ballots were marked with a cross in the circle of more than one party ticket, with no other marks on the said ballots and no mark in the square in front of either candidate for prosecuting attorney, McNally or O'Brien. Such ballots are called "double straight" ballots. It appears that defendant board ruled that on a double straight ballot where one of the party tickets so marked with a cross in a circle had no candidate on it for prosecuting attorney, and the other party ticket also so marked with a cross in the circle had thereon the name of a candidate for prosecuting attorney, the ballot was valid and the defendant counted the same for the candidate whose name was in the column under one of the circles marked by the voter. Plaintiff claims that the net gain for contestant O'Brien by reason of counting such double straight ballots is about 400 votes.

Upon the argument of the case it was shown that many ballots which apparently had been counted by the various local precinct election boards were rejected by the defendant on the recount for want of

initials on the ballots and for other reasons, but the net result of such other rulings by defendant does not appear in the record. The question of the effect of want of initials on the ballots is not in issue in this proceeding. The defendant in its answer states, in effect, that the recount has now been completed and that of the votes, which the board ruled to be lawful, candidate Gerald K. O'Brien has under the tabulation of said recount received 303,173 votes, and candidate James N. McNally has received 303,151 votes. Defendant's answer further states that these totals of figures on the recount includes and reflects the counting of double straight ballots in all precincts of Wayne county.

The attorney for O'Brien was permitted to participate in the argument of the matter on its submission herein.

Defendant questions the propriety of our taking jurisdiction of this case and suggests quo warranto as an adequate procedure to determine title to public office where there are disputed rulings on ballots such as are involved in this case. We are of the same· attitude toward mandamus proceedings in such cases as we expressed in *Smith* v. *Board of Canvassers of Saginaw County*, 220 Mich. 318, 321. Though the petition should have been presented to the circuit court for Wayne county, nevertheless we are willing to exercise jurisdiction in the instant case because we consider it of extreme urgency. The Constitution of this State, art. 7, § 4, clothes this Court with power to issue the writ of mandamus. 3 Comp. Laws 1929, § 13535 (Stat. Ann. § 27.29), makes further provision concerning such power. A brief discussion of the jurisdiction of this Court in mandamus cases occurs in *Chemical Bank & Trust Co.* v. *County of Oakland*, 264 Mich. 673, 678–680. The jurisdiction of this Court to hear

and determine mandamus cases brought against boards canvassing votes cast at public elections is too well settled to require detailed citation of cases.

Defendant counts on the decision in *Cory* v. *MacKenzie*, 297 Mich. 523. Defendant relies upon words contained in the following paragraph from the majority opinion, 531, 532:

"A striking instance of giving effect to the intention of the voter is found in subsection (6) of the election law, above referred to (see p. 529 of the opinion), where it is provided that, when an elector votes a ticket by a cross in the circle under the party name and also writes in or places upon the ticket the name of a candidate opposite the name of an office, the vote shall be counted for such candidate, although the name of the original candidate, as printed on the ballot, is not erased therefrom. The effect of this provision of our statute is similar in principle to those adjudications which hold that, where a ballot is marked with cross marks in circles at the head of each of several tickets appearing thereon, it can be counted for no party, if all the tickets are complete, as such marks counteract each other; but that such ballots may be counted for the candidates on either of the tickets upon the other of which there are no opposing candidates. *Caldwell* v. *McElvain*, 184 Ill. 552 (56 N. E. 1012); *People, ex rel. Feeny,* v. *Board of Canvassers of Richmond County,* 156 N. Y. 36 (50 N. E. 425); 20 C. J. p. 160."

The New York case cited in the *Cory Case, supra,* amounted to the carrying out and giving effect to the provision of the New York statute on which a voter in New York state had a right to rely when he cast his double straight ballot.

It is readily noticeable that what Justice McALLISTER and those Justices who joined with him had in mind in the *Cory Case* was to illustrate from the Illinois and New York cases how far those states

have gone in giving effect to "the intention of the voter." The syllabus of the *Cory Case,* p. 524, erroneously recites:

"The marking of a ballot with cross marks in circles at the head of each of several tickets appearing thereon can be counted for no party, if all the tickets are complete, as such marks counteract each other, but such ballot may be counted for the candidates on either ticket upon the other of which there are no opposing candidates."

What is said in an opinion by way of illustration only is of no binding authority as a decision. *Folsom* v. *Teichner,* 27 Mich. 107, 109.

The kind of ballot with which we are concerned in the instant case was not before the court in the *Cory Case.* In the *Cory Case* this Court was concerned with eight ballots, on each of which the voter had pasted a slip with the name of a candidate on the slip different from that over which the slip was pasted, but no cross was made in the square in front of the name. The dispute was whether the eight ballots should be counted as votes for the person whose name was on the slips so pasted onto the ballots.

We do not overlook the citation of defendant in this case from *City of Detroit* v. *Michigan Public Utilities Commission,* 288 Mich. 267, 299, 300 (29 P. U. R. [N. S.] 203), where some words appear to the effect that all that is necessary for a decision to be authoritative is to show application of the judicial mind to the subject. Such words are to be considered as explained or modified by the quotations immediately following from Wisconsin and Maryland cases as to the matter being germane to the issue and the fullness of the discussion and actual submission by the parties. We have examined the record and briefs in the *Cory Case* and find

that the validity of double straight ballots was not discussed nor made a part of the *Cory Case* in any manner, except as it is referred to in the opinion, and therefore the *Cory Case* is not to be considered as determining that question. The *Cory Case* did not undertake to decide that double straight ballots should be counted. So far as open to that construction, such words in the opinion are in any event mere obiter dicta.

"A decision is, generally, not a precedent as to a point which was not sufficiently argued and presented to the court, although if the point was an essential one the fact that it was duly presented and considered may be presumed." 21 C. J. S. p. 299.

In *People* v. *Case,* 220 Mich. 379, 382, 383 (27 A. L. R. 686), we say:

"It is a well-settled rule that any statements and comments in an opinion concerning some rule of law or debated legal proposition not necessarily involved nor essential to determination of the case in hand are, however illuminating, but obiter dicta and lack the force of an adjudication."

In speaking of the authority of judicial opinions as precedents, this Court has expressed itself in several cases, among which are *Larzelere* v. *Starkweather,* 38 Mich. 96; *Wolcott* v. *Holcomb,* 97 Mich. 361, 368 (23 L. R. A. 215); *Micks* v. *Mason,* 145 Mich. 212 (11 L. R. A. [N. S.] 653, 9 Ann. Cas. 291); *People* v. *Barltz,* 212 Mich. 580 (12 A. L. R. 520); *Keasey* v. *Engles,* 259 Mich. 178.

The Illinois case cited in the *Cory* decision, *Caldwell* v. *McElvain,* 184 Ill. 552 (56 N. E. 1012), contains the following as its complete statement on so-called double straight ballots, p. 558:

"There were a considerable number where voters had made a cross in the circle at the head of more

than one ticket. There were five tickets on the ballot: the Republican, Democratic, People's, Prohibition, and Socialist Labor. The Republican and Democratic tickets were the only ones upon which there was a candidate for county judge. Where there were marks in the circle at the head of these two, the vote was for both, and neither was counted; but where there was a cross at the head of the Democratic or Republican ticket, and also at the head of one or more of the other tickets, the ballot was counted for the candidate for county judge on said Democratic or Republican ticket. There being no candidate for that office on the other tickets, the cross did not indicate a vote for that office. The rulings on these questions were right."

The Illinois court gave no explanation of the reason that led to such determination, which fact leaves us but little ground for considering the conclusion as a precedent for us to follow. The same lack of expressly stated reasoning appears in *Neff* v. *George,* 364 Ill. 306 (4 N. E. [2d] 388). For that reason we disregard the Illinois decision in the *Caldwell* and *Neff Cases.*

Defendant cites *Donlan* v. *Cooke,* 212 Iowa, 771 (237 N. W. 496). In paragraph (6) on p. 775, that decision for its support refers to *Spurrier* v. *McLennan,* 115 Iowa, 461 (88 N. W. 1062). The sole portions of the *Spurrier Case* thus referred to that have anything of importance for our present consideration are contained in subdivisions 3 and 5 of the opinion, which are as follows, 464, 466:

"3. Upon the ballot sheet appeared tickets of the Prohibition and Socialist Labor parties. Neither of these contained county tickets. Several of these tickets were marked in the circle, and a mark also placed in the square opposite the name of incumbent on the Republican ticket. These ballots were counted for the incumbent, and this action of the

canvassing board was sustained by the district court. Section 1120 of the Code is in part as follows: '(1) When a circle is marked, the ballot shall be counted for all the names upon the ticket beneath the circle. The making of a cross in the square of another ticket than the one marked in the circle shall not affect the validity of the ballot, except as to the office for which the person opposite whose name such mark was made is a candidate, and as to such office the vote shall not be counted.'. This section, we think, makes the cross in the circle effective as a vote for all names printed upon the ticket below it; but for nothing more. Such a cross cannot indicate a vote for an office that is left blank upon that ticket. If these tickets had contained the name of a nominee for the office of clerk of the district court, and the voters, after marking the circle, had put a cross in the square preceding the name of incumbent on the Republican ticket, they would have voted for two candidates for an office to which but one could be elected, and for such officer their votes could not be counted. But this reason does not apply in such a case as that now before us. The crosses in the circles were not votes for clerk of the district court, because the name of no candidate for that place appeared below them. The only votes for such officer were those indicated by the crosses in the square before incumbent's name, and we think they were rightly counted for him.    *    *    *

"5. A number of Republican tickets, upon which the name of incumbent was printed, were marked in the circle with a cross, and a cross likewise put in the square before each name thereon except that of incumbent; the square before his name was left blank, and a cross placed in the square preceding contestant's name on the Democratic ticket. These ballots the district court refused to count for contestant. What is said in the third division of this opinion applies here. A cross in the circle conclusively means a vote for the whole ticket printed

below it, and marking the square before a name on another ticket has no effect other than to nullify the vote for the officer thus doubly voted for. This rule is in no wise altered by the marking of the squares below the marked circle also. The statute providing for the effect to be given a cross in the circle makes no exception of such a case."

The Iowa statute seems to be considerably different from the Michigan statute, in the matter of the effect of placing a cross in the circle and in the matter of placing a cross in the square before the name on another ticket. The Iowa case is therefore of little value for our decision in the instant case.

In the case of *Moody* v. *Davis,* 13 S. D. 86 (82 N. W. 410), the court say,

"There were cast 28 votes which were marked by a cross in the circle at the head of the Union Reform party ticket, and a cross in the circle at the head of the People's party ticket. On the Union Reform party ticket were the names of three candidates for judges of the supreme court, and on the People's party ticket there was only the name of the plaintiff, as candidate for county commissioner in and for the Fifth district."

We quote from p. 92 of the same opinion: ·

"In enacting the Australian ballot system in this State, our legislature seems to have kept in view the distinction between the ticket voted by the elector, and the ballot which embraces all the tickets of the various parties; and this court, in adopting this view, has held that where the elector attempts to vote more than one ticket, by marking a cross in the circle at the head of two tickets printed on the ballot, neither ticket can be counted. *Vallier* v. *Brakke,* 7 S. D. 343 (64 N. W. 180); *McKittrick* v. *Pardee,* 8 S. D. 39 (65 N. W. 23); *McMahon* v. *Polk,* 10 S. D. 296 (73 N. W. 77, 47 L. R. A. 830). In *McKittrick* v.

*Pardee, supra,* some of the tickets were quite similar
to those in the case at bar,—one party having nom-
inated and placed upon its ticket the State officers,
and another party having placed upon its ticket the
county officers only,—and the voter apparently at-
tempted to vote both tickets, by placing a cross in
the circle at the head of each of the two party tick-
ets; and this court held that neither of those tickets
could be counted, following the doctrine laid down in
*Vallier* v. *Brakke, supra.* These facts do not appear
in the opinion, probably for the reason that the
court did not deem it material that one ticket em-
braced only the State officers, and the other ticket
the county officers. Nor do we deem it material in
the case at bar that one ticket embraces only candi-
dates for judges of the supreme court and the other
ticket only the candidate for county commissioner.
The tickets are separate and distinct, and as the
elector is only authorized to vote one ticket, and
both tickets are marked by a cross in the circle at its
head, neither can be counted.

"Counsel for the respondent contend that the
learned circuit judge must have taken the view that
the intention of the elector to vote for the judges
and also for the county commissioner was clear, but
we know of no rule by which the court below or this
court can say that such was the intention of the
voter. The law declares that, if such was his inten-
tion, it should have been expressed by marking a
cross in the circle at the head of one ticket, and fill-
ing up that ticket by marking a cross in the circle at
the left of the name of the candidate intended to be
voted for on another party ticket, and so made to
constitute a part of his ticket, and this is the only
method by which the courts can determine what the
intention of the voter was. The method by which
the voter may make up his ticket in this State is so
simple that we do not deem it necessary to fritter
away the provisions of the statute in attempting to
seek in some undefined method the intention of the

elector. Judges of election and courts should not be required to spend their time in endeavoring to ascertain what the intention of the elector was in depositing his ballot, except so far as he has expressed that intention in the matter and by the methods prescribed by the lawmaking power. As we said in the case of *Vallier* v. *Brakke, supra,* any man of ordinary intelligence can learn in a very few minutes the method of marking his ballot, so that his intention can be clearly understood, and no person has a right to complain if he fails to take the time required to enable him to properly make up his ticket, and thereby loses his vote."

The South Dakota statute is similar in several important respects to the Michigan statute. The reasoning of the South Dakota court seems to us to be sound, and in general, is considered as of assistance in arriving at a decision in the instant case.

In the Michigan statute, 1 Comp. Laws 1929, § 3077 (Stat. Ann. § 6.365), there is a command to place the following among the instructions at the top of the official ballot.:

"To vote a straight party ticket make a cross (X) in the circle (O) under the name of your party. Nothing further need be done. To vote for a candidate not on your party ticket, make a cross (X) in the square ☐ before his name. * * *

"If you do not desire to vote any party ticket, do not make a cross (X) in the circle (O) at the head of any ticket, but make a cross (X) in the square ☐ before the name of each candidate for whom you desire to vote."

The Michigan voter who marked a double straight ballot must be conclusively presumed to have known that such marking was contrary to statutory provisions. The result was that each mark in a circle cancelled the mark in the other circle, and in law

expressed an intention to vote no party ticket. It would follow that under the statutory instructions it was necessary for any voter not desiring to vote any party ticket to make a mark in the square in front of each candidate for whom he intended to vote. If he failed to do so, he failed to comply with the law and instructions given him, and therefore under the Michigan statute the ballot should be rejected entirely.

We should give effect to the expressed intention of the voter, but where the voter is indifferent to, and disobeys, the plain import of the statute's instructions, it is not for the court to supply nor to construct an intention which the voter did not express. When the voter simply marked a cross in each of two party circles, his whole ballot meant nothing without further marks upon it. The statute does not recognize the right of a voter to so mark the ballot. Each of the two straight tickets cancelled the other.

When a voter places a cross at the head of two separate tickets, his intention as to which of the two he desired to vote would be a matter of pure conjecture. He may have inadvertently placed a cross in the wrong party circle and, neglecting to erase it, sought to carry out his actual intention by placing a cross in the circle at the head of another party ticket. In view of the above noted specific directions, which the statute requires to be printed at the head of the ballot, neither the election officials nor the courts may speculate (with no other indication on the ballot) as to the voter's intent to vote for one or more of the candidates on one of the marked tickets merely because no opposing candidate was named on the other. So-called "double straight" ballots are invalid.

For the reasons heretofore recited, the double straight ballots hereinbefore described should not be counted for the office of prosecuting attorney for Wayne county. Defendant board is directed to reject the double straight ballots heretofore described and proceed further with their duties as a board of canvassers. A writ will issue if found necessary. No costs are allowed, a matter of public interest being involved.

Carr, C. J., and Butzel, Bushnell, Sharpe, Boyles, North, and Dethmers, JJ., concurred.